1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| MARCUS GILLIAM, | |
| Plaintiff, | Case No: 21-5263 |
| -against- | COMPLAINT |
| PATRICK LYNCH, THE POLICE BENEVOLENT ASSOCIATION OF THE CITY OF NEW YORK, INC., DETECTIVES' ENDOWMENT ASSOCIATION, INC., "Jane Doe NYPD Officer who ordered a Strawberry Shake", "John Doe NYPD Officer who ordered a vanilla shake", "Richard Roe NYPD OFFICER" who ordered a Cherry Shake", "NYPD Sergeant who stated When Did You Add The Bleach", "NYPD Sergeant Who called in ESU", NYPD Officers JOHN DOE 1-20 (Names and Number of whom are unknown at this time), and CITY OF NEW YORK, | PLAINTIFF DEMANDS A TRIAL BY JURY |
| Defendants. | |

Plaintiff, appearing by his attorneys, Roth & Roth LLP, hereby alleges

against defendants as follows:

## I. Preliminary Statement

1.      On June 15, 2020, Defendants defamed Plaintiff—the manager of a

Shake Shack restaurant in Lower Manhattan—by falsely accusing him of

intentionally poisoning three New York City Police officers. As a result, Plaintiff

was falsely arrested, and suffered emotional and psychological damages and

damage to his reputation.

2

2.     Plaintiff brings this civil rights action for compensatory and punitive damages to redress the deprivation, under color of state law, of rights secured to him under the First, Fourth and Fourteenth Amendments of the United States Constitution. Plaintiff also seeks damages for defamation and deprivation of his rights under New York law.

## II. Jurisdiction

3.     Jurisdiction is conferred upon this Court by 28 U.S.C. §1343, which provides for original jurisdiction over all actions brought pursuant to 42 U.S.C. §1983, by 28 U.S.C. §1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the United States. The Court has pendent jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## III. Parties and Conditions Precedent

4.     Plaintiff Marcus Gilliam resides in the City and State of New York.

5.     Defendant City of New York ("City") is a municipal corporation, incorporated pursuant to the laws of the State of New York.

6.     Defendant CITY maintains the New York Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

3

7.      Defendant THE POLICE BENELOVENT ASSOCIATION OF THE

CITY OF NEW YORK, INC. ("PBA") is the largest police union representing NYPD

officers. It represents approximately 24,000 of the City's 36,000 NYPD officers.

8.      Defendant THE DETECTIVES' ENDOWMENT ASSOCIATION, INC.,

is a union that represents approximately 5,500 active and 12,000 retired NYPD

Detectives

9.      Defendant PATRICK LYNCH is, upon information and belief, a

resident of the State of New York, and a police officer with the NYPD. LYNCH is

also the President of the PBA. LYNCH is sued in his individual capacity.

10.     Defendants "Jane Doe NYPD Officer" who ordered a Strawberry Shake

("Officer Strawberry Shake"), "John Doe NYPD Officer" who ordered a vanilla shake

("Officer Vanilla Shake"), "Richard Roe NYPD OFFICER" who ordered a Cherry

Shake ("Officer Cherry Shake"), were at all times relevant to this complaint, duly

sworn police officers of the NYPD, assigned to the 42nd Precinct, and were acting

under the supervision of the NYPD and according to their official duties. Plaintiff

asserts his claims against Officer Strawberry Shake, Officer Vanilla Shake, and

Officer Cherry Shake in both their official and individual capacities.

11.     Defendants "NYPD Sergeant who stated When Did You Add The

Bleach", and "NYPD Sergeant Who called in ESU," were at all times relevant to this

complaint, duly sworn NYPD Sergeants and were acting under the supervision of

the NYPD and according to their official duties. Plaintiff asserts his claims against

4

"NYPD Sergeant who stated When Did You Add The Bleach", and "NYPD Sergeant

Who called in ESU," in both their official and individual capacities.

12.     Defendants "John Does 1–20" were those officers who were part of the

group of members of service of the NYPD that assisted in the detainment and arrest

of Plaintiffs.

13.     That at all times hereinafter mentioned, Defendant Officer Strawberry

Shake, Officer Vanilla Shake, Officer Cherry Shake, NYPD Sergeant who stated

When Did You Add The Bleach", and "NYPD Sergeant Who called in ESU," and

Defendant POLICE OFFICERS "JOHN DOES 1-20" (Collectively, "Defendant

POLICE OFFICERS," individually, "Defendant POLICE OFFICER"), were duly

sworn police officers of said department and were acting under the supervision of

said department and according to their official duties.

14.     At all times relevant herein, the Defendant POLICE OFFICERS either

personally or through their employees, were acting under color of state law and/or

in compliance with the official rules, regulations, laws, statutes, customs, usages

and/or practices of the State or City of New York.

15.     Each and all of the acts of the Defendant POLICE OFFICERS alleged

herein were done by said Defendants while acting within the course and scope of

their duties and functions as agents, servants, employees and officers of the

Defendant CITY.

5

16.     Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting in furtherance of their employment by Defendant CITY.

17.     Plaintiff, in furtherance of his causes of action brought pursuant to New York State law, filed timely a Notice of Claim against the CITY, in compliance with the Municipal Law Section 50, and the Defendant CITY OF NEW YORK held a 50-h hearing on August 17, 2020.

18.      More than thirty (30) days have elapsed since said Notice of Claim was filed and the CITY has failed to pay or adjust the claim.

19.     This action is being brought within a year and 90 days of the event giving rise to Plaintiff's State causes of action.

20.     This action falls within one or more of the exceptions as set forth in CPLR Section 1602, involving intentional actions, as well as the defendant, and/or defendants, having acted in reckless disregard for the safety of others, as well as having performed intentional acts.

21.     Plaintiff sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## IV. Facts

22.     On May 25, 2020, Minneapolis police officer Derek Chauvin murdered George Floyd, who was handcuffed and lying face down on the ground, by suffocating him to death in broad daylight on the street.

6

23.     Floyd's murder and the police murder of Breonna Taylor in Louisville,

Kentucky, in addition to recent police murders of other Black people in the United

States sparked the largest movement for social and racial justice in history and has

included peaceful protests around the world against anti-Black police violence,

systemic racism, and inequality.

24.     The many protests in New York City were universally critical of the

NYPD and its continued policies of targeting and victimizing people of color –

echoing protests after the NYPD's unjustified killings of Ramarley Graham, Akai

Gurley, Eric Garner, Delrawn Small, Sean Bell, and countless others. The protests

called for reforming and even dismantling the NYPD, and re- directing funds to

needed social and civic programs in communities of color. City officials, particularly

Mayor Bill de Blasio, Police Commissioner Dermot F. Shea, and Chief of

Department Terence A. Monahan, openly expressed hostility toward their

viewpoint. They moved to suppress the protests with well-orchestrated operations

corralling and violently arresting the protesters.

25.     Following the murder of George Floyd, the NYPD carried out no less

than six operations between May 29 and June 4, 2020 where they surrounded and

"kettled" protesters critical of the NYPD and police practices that target

communities of color, and violently assaulted and arrested protesters. See *Gelbard*

et al. *v. City of New York* et al., No. 20 Civ. 3163 (E.D.N.Y.); *Sierra et al.* v. *City of*

7

*New York, et al.*, No. 20 CV 10291 (S.D.N.Y.); *Payne* et al. *v. de Blasio* et al. No. 20-cv-08924 (S.D.N.Y.).

26.     It is within this background that on June 15, 2020, Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake were sent from the 42nd Precinct in the Bronx to lower Manhattan for "protest duty".

27.     At approximately 7:30 p.m., the three officers used a mobile application to order three milkshakes—one strawberry, one vanilla, and one cherry—from the Shake Shack at Fulton Transit Center.

28.     When the officers arrived several minutes later, their milkshakes were packaged and waiting for them.

29.     After sipping the shakes, Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake complained that their shakes did not taste right, so they threw the drinks in the trash.

30.     Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake then informed Plaintiff MARCUS GILLIAM, who was working as the manager at the Shake Shack that they believed there was something was wrong with the shakes.

31.     Mr. GILLIAM apologized and issued Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake vouchers for free food and milkshakes, which they accepted.

8

32.    Since the orders were placed using a mobile application, and not in person, Mr. GILLIAM and the other Shake Shack employees could not have known that police officers had placed the order.

33.    Since the order was already packaged and waiting for pickup when Officers Strawberry Shake, Vanilla Shake and Cherry Shake arrived at the Shake Shack, Mr. GILLIAM and the other Shake Shack employees could not have "dosed" the milkshakes after they arrived.

34.    Nevertheless, Officers Strawberry Shake, Vanilla Shake and Cherry Shake falsely informed their Sergeant that Mr. GILLIAM had put a "toxic substance", possibly bleach, in their milkshakes.

35.    Despite claiming that Mr. GILLIAM had put a "toxic substance", possibly bleach in their milkshakes, Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake did not preserve the shakes as evidence, but threw them in the garbage.

36.    The Sergeant then called in the Emergency Service Unit to set up a crime scene at Shake Shack.

37.    At approximately 9:20 p.m.—nearly two hours after Officers Strawberry Shake, Vanilla Shake and Cherry Shake first got the "sour" shakes— NYPD's Emergency Service Unit arrived and set up a crime scene at the Shake Shack.

9



38.     The Emergency Services Unit, upon information and belief, tested the

discarded milkshakes and found no evidence of any bleach or other "toxic"

substances.

39.     John Doe Police Officers 1-20 arrived at the Shake Shack and detained

Plaintiff and all the other Shake Shack employees.

40.     Plaintiff denied the allegations but cooperated with the police

investigation in every way, including, but not limited to: (a) voluntarily permitting a

thorough physical search of the premises; (b) allowing employees to be interviewed

on the scene by police officers; (c) permitting officers to review the surveillance video

recorded during the time of the alleged "poisoning"; (d) showing the officers how

milkshakes are made; (e) permitting officers to search the belongings of the

employees, including inside of backpacks and other bags.

41.    When Plaintiff was showing the Defendant Police Officers how to make

a milkshake, Defendant "Police Sergeant When Did You Add the Bleach" stated to

Plaintiff "when did you add the bleach?"

42.    The Defendant POLICE OFFICERS reviewed the security camera

footage and determined that neither Plaintiff nor any other employee put bleach or

any other "toxic substance" in the milkshakes.

43.    Nevertheless, Defendant "Police Sergeant When Did You Add the

Bleach" stated to Plaintiff "you put three of my cops in the hospital."

44.    Defendant Officers Strawberry Shake, Vanilla Shake and Cherry

Shake were taken to Bellevue Hospital, where they were examined and released

without ever showing symptoms.

45.    Nevertheless, an NYPD Lieutenant sent an email to the PBA and

DEA, falsely informing the unions that Defendant Officers Strawberry Shake,

Vanilla Shake and Cherry Shake had "started throwing up after drinking beverages

they got from shake shack on 200 Broadway."

46.    The PBA and DEA knew that the email was false because the officers

had gone to the hospital and were released without ever showing any symptoms.

47.    Nevertheless, the DEA sent out the following tweet, which was shared

approximately 11,000 times:

11

*🔊URGENT SAFETY MESSAGE🔊*

*Tonight, three of our fellow officers were intentionally*

*poisoned by one or more workers at the Shake Shack at*

*200 Broadway in Manhattan. Fortunately, they were not*

*seriously harmed. Please see the safety*

*alert⬇ https://t.co/D8Lywivhdu*

48.     The DEA tweet was of and concerning Plaintiff because those who

know him recognized that as manager of the Shake Shack, the tweet referred to

him.

49.     Similarly, PBA president, Defendant LYNCH, published a tweet that

was shared thousands of times, which stated:

> "This evening, several MOS assigned to protest detail in
> lower Manhattan took meal at the Shake Shack location on
> Broadway and Fulton Street. At some point during their
> meal period, the (officers) discovered that a **toxic
> substance, believed to be bleach, had been placed in their
> beverages**. The contamination was not discovered until the
> (officers) had already ingested a portion of their beverages.
> They are currently at the hospital receiving treatment and
> are expected to recover. When New York City police officers
> cannot even take meal without coming under attack, it is
> clear that environment in which we work has deteriorated
> to a critical level. We cannot afford to let our guard down
> for even a moment."

50.     Defendant LYNCH's tweet was republished by the PBA, which was

also shared thousands of times:

12





🔁 NYC PBA Retweeted

NYC PBA ✔ @NYCPBA · 9h

#BREAKING When NYC police officers cannot even take meal without coming under attack, it is clear that environment in which we work has deteriorated to a critical level. We cannot afford to let our guard down for even a moment.

CRITICAL   CRITICAL   CRITICAL   CRITICAL

THE NEW YORK CITY PATROLMEN'S BENEVOLENT ASSOCIATION
**PBA UPDATE**
www.nycpba.org          Patrick J. Lynch President

Dear PBA Member,

I am writing to alert you to yet another serious safety issue. This evening, several MOS assigned to a protest detail in lower Manhattan took meal at the Shake Shack location on Broadway and Fulton Street. At some point during their meal period, the MOS discovered that **a toxic substance, believed to be bleach, had been placed in their beverages.** The contamination was not discovered until the MOS had already ingested a portion of their beverages. They are currently at the hospital receiving treatment and are expected to

💬 1,199       🔁 1,930       ♡ 2,880       ⬆️

51.    In addition to being "liked" and "shared" thousands of times, thousands of individuals commented on the tweets expressing their disdain for Plaintiff.

52.    The tweets by Defendants LYNCH, PBA and DEA were of and concerning Plaintiff because those who know him recognized that as manager of the Shake Shack, the tweet referred to him.

53.    Defendants LYNCH, PBA and DEA were grossly irresponsible in disseminating the tweets, since there was no evidence whatsoever that Plaintiff or

13

his employees had poisoned Defendant Officers Strawberry Shake, Vanilla Shake

and Cherry Shake and because they never even got sick.

54.     Defendants LYNCH, PBA and DEA were negligent in disseminating

the tweets, since there was no evidence whatsoever that Plaintiff or his employees

had poisoned Defendant Officers Strawberry Shake, Vanilla Shake and Cherry

Shake and because they never even got sick.

55.     As a result of the false accusation by Defendant Officers Strawberry

Shake, Vanilla Shake and Cherry Shake, Plaintiff was unlawfully seized by the

Defendant POLICE OFFICERS.

56.     As a result of the false accusation by Defendants DEA, PBA and

LYNCH, Plaintiff was unlawfully seized by John Doe NYPD officers.

57.     As a result of the false accusation by Defendant Officers Strawberry

Shake, Vanilla Shake and Cherry Shake, Plaintiff was falsely arrested by the

Defendant POLICE OFFICERS.

58.     As a result of the false accusation by Defendants DEA, PBA and

LYNCH, Plaintiff was falsely arrested by the Defendant POLICE OFFICERS.

59.     Plaintiff was placed in the back of a police car and transported to the

1st Precinct.

60.     When he arrived at the 1st Precinct, Plaintiff was placed in an

interrogation room, where he was questioned by two NYPD Detectives.

61.     Plaintiff was interrogated for approximately one to two hours.

14

62.    Throughout the interrogation, the Detectives taunted Plaintiff about putting bleach in the milkshakes.

63.    Eventually, after being detained at the 1st Precinct for approximately three hours, an NYPD officer drove Plaintiff back to the Shake Shack at approximately 1:30 a.m.

64.    Plaintiff was unlawfully detained by the Defendant POLICE OFFICERS against his will for approximately five to six hours.

65.    Thereafter, at approximately 4:00 a.m. on June 16, 2020, NYPD Chief Rodney Harrison sent a tweet admitting that Plaintiff and the other Shake Shack employees had done nothing wrong.



66.    Chief Harrison's tweet constitutes and admission that Plaintiff was falsely arrested and defamed.

67.    The Defendant POLICE OFFICERS lacked probable cause to arrest Plaintiff for any crime.

68.    No reasonable police officer would have believed that there was probable cause to arrest Plaintiff for any crime.

15

69.     After the incident, numerous people contacted Plaintiff to ask about the incident.

70.     After the incident, numerous people contacted Plaintiff and asked him if he "poisoned" Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake.

71.     After the incident, numerous people contacted Plaintiff to ask him about the false allegations in the tweets by Defendants LYNCH, PBA and DEA.

72.     After the incident, numerous Shake Shack customers asked Plaintiff about the false allegations in the tweets by Defendants LYNCH, PBA and DEA.

73.     After the incident, numerous individuals entered the Shake Shack and taunted Plaintiff for allegedly poisoning Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### FALSE ARREST UNDER 42 U.S.C. § 1983

74.     Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

75.     One or more of the Defendant POLICE OFFICERS seized and arrested plaintiff.

76.     This arrest was made in the absence of a warrant for the arrest.

77.     This arrest was made in the absence of probable cause for this arrest.

78. The Defendant POLICE OFFICERS arrested plaintiff without having exigent circumstances for doing so.

79. There was no other authority for the arrest of plaintiff.

80. The plaintiff was conscious of this arrest.

81. The plaintiff did not consent to this arrest.

82. As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer economic injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, economic damages, legal expenses and damages to his reputation and standing within his community.

83. Accordingly, Plaintiff demands judgment against Defendants in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER NEW YORK STATE LAW

84. Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

85. Defendant POLICE OFFICERS seized and arrested Plaintiff.

86. As a result of the aforesaid conduct by the Defendants, Plaintiff was unlawfully detained and confined.

87. The Defendant Police Officers——in performance of their duties with powers and authorities designated upon them by the Defendant CITY—— intentionally confined Plaintiff.

17

88.     Plaintiff was at all times consciously aware of her confinement by the Defendant Police Officers.

89.     The arrest was made in the absence of a warrant for the arrest.

90.     The arrest was made in the absence of probable cause for the arrest.

91.     The Defendant Police Officers arrested Plaintiff without having exigent circumstances for doing so.

92.     There was no other authority for the arrest of Plaintiff.

93.     Plaintiff was conscious of the arrest.

94.     Plaintiff did not consent to the arrest.

95.     At no point throughout Plaintiff's unlawful detention and confinement by the Defendant Police Officers were the actions of the Defendant Police Officers otherwise privileged.

96.     Defendant City is also liable to Plaintiff on the basis of *respondeat superior* as a result of the unlawful actions of the Defendant Police Officers as described herein.

97.     As a result of Defendants' impermissible conduct, Plaintiff was injured and harmed.

98.     Accordingly, Plaintiff demands judgment against Defendants in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

### THIRD CLAIM FOR RELIEF
### DEFAMATION *PER SE* UNDER NEW YORK STATE LAW

18

99.    Plaintiff re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

100.    Defendants LYNCH, PBA and DEA published false statements claiming that Plaintiff "poisoned" Officers Strawberry Shake, Vanilla Shake and Cherry Shake.

101.    Defendants LYNCH, PBA and DEA published statements of and concerning the Plaintiff.

102.    Defendants LYNCH, PBA and DEA published statements that referred to the Plaintiff such that those who know him would recognize he was the target of the false statements.

103.    The false statements published by Defendants LYNCH, PBA and DEA accused Plaintiff of serious criminal activity under New York Law, because:

   a.  "poisoning" a police officer would constitute felony assault, N.Y. Penal Law § § 120.05, 120.10.

   b.  "poisoning" a police officer would be regarded by public opinion as involving moral turpitude.

104.    The false statements published by Defendants LYNCH, PBA and DEA were stigmatizing and caused Plaintiff a loss of liberty.

105.    Defendants LYNCH, PBA and DEA acted intentionally and/or recklessly, which entitles Plaintiff to punitive damages.

19

106.    As a result the actions of Defendants LYNCH, PBA and DEA, Plaintiff suffered loss of liberty; was falsely arrested; lost wages; incurred expenses, including legal fees; loss of reputation and standing in his community; and suffered humiliation, pain and suffering, terror, and mental anguish, all of which is ongoing.

107.    The plaintiff is entitled to compensatory and punitive damages in an amount to be determined at trial, together with attorney's fees and costs.

108.    The City, as the employer of individual defendants, is responsible for their wrongdoing under the doctrine of *respondeat superior.*

**WHEREFORE,** Plaintiff respectfully requests that judgment be entered for all claims:

   i.   Awarding plaintiff full and fair compensatory damages as decided by the jury; and
   ii.  Awarding plaintiff full and fair punitive damages as decided by the jury; and
   iii. Awarding plaintiff reasonable attorney fees pursuant to 42 U.S.C. §1988; and
   iv.  Granting such other and further relief as this Court may deem just and proper.

Dated:      New York, New York
            June 14, 2021

                              ROTH & ROTH, LLP


                              Elliot D. Shields, ED3372
                              192 Lexington Ave., Suite 802
                              New York, New York 10016
                              212-425-1020
                              eshields@rothandrothlaw.com