1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

MARCUS GILLIAM, CATHERINA IRVING,
RANDY GRULLON,

Plaintiff,

-against-

GENESIS Y. NOVA DIAZ (officer "Strawberry
Shake"), EDWIN REYES ESTRADA (officer
"Vanilla Shake"), PRECIOUS CUMMINGS
(officer "Cherry Blossom Shake"), BRIAN
QUERY (Lieutenant who stated "When Did
You Add The Bleach"), SERGEANT ELLIOT
ZINSTEIN (Sergeant "Who called in ESU"),
NYPD Officers JOHN DOE 1-20 (Names and
Number of whom are unknown at this time),
and CITY OF NEW YORK,

Defendants.

Case No: 21-5263

SECOND AMENDED
COMPLAINT

PLAINTIFFS DEMAND A
TRIAL BY JURY

Plaintiffs, appearing by their attorneys, Roth & Roth LLP, hereby alleges

against defendants as follows:

## I. Preliminary Statement

1.     On June 15, 2020, Defendants falsely accused Plaintiffs—the manager

and two employees of a Shake Shack restaurant in Lower Manhattan—of

intentionally poisoning three New York City Police officers. As a result, Plaintiffs

were falsely arrested, detained for an extended period of time, and suffered

emotional and psychological damages and damage to their reputation.

2

2.      Plaintiffs bring this civil rights action for compensatory and punitive damages to redress the deprivation, under color of state law, of rights secured to them under the First, Fourth and Fourteenth Amendments of the United States Constitution. Plaintiff Gilliam also seeks damages for deprivation of his rights under New York law.

## II. Jurisdiction

3.      Jurisdiction is conferred upon this Court by 28 U.S.C. §1343, which provides for original jurisdiction over all actions brought pursuant to 42 U.S.C. §1983, by 28 U.S.C. §1331, which provides jurisdiction over all cases brought pursuant to the Constitution and laws of the United States. The Court has pendent jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. §1367.

## III. Parties and Conditions Precedent

4.      Plaintiffs Marcus Gilliam, Catherina Irving and Randy Grullon reside in the City and State of New York.

5.      Defendant City of New York ("City") is a municipal corporation, incorporated pursuant to the laws of the State of New York.

6.      Defendant CITY maintains the New York Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

3

7.     GENESIS Y. NOVA DIAZ (officer "Strawberry Shake"), EDWIN REYES ESTRADA (officer "Vanilla Shake"), PRECIOUS CUMMINGS (officer "Cherry Blossom Shake"), BRIAN QUERY (Lieutenant who stated "When Did You Add The Bleach"), SERGEANT ELLIOT ZINSTEIN (Sergeant "Who called in ESU"), and Defendants "John Does 1–20" (Names and Number of whom are unknown at this time), were at all times relevant to this complaint, duly sworn police officers of the NYPD, were acting under the supervision of the NYPD and according to their official duties. Plaintiffs assert their claims against Officer Strawberry Shake, Officer Vanilla Shake, and Officer Cherry Shake in both their official and individual capacities.

8.     Defendants "John Does 1–20" were those officers who were part of the group of members of service of the NYPD that assisted in the detainment and arrest of Plaintiffs. Several John Does are depicted in the above photograph.

9.     That at all times hereinafter mentioned, GENESIS Y. NOVA DIAZ (officer "Strawberry Shake"), EDWIN REYES ESTRADA (officer "Vanilla Shake"), PRECIOUS CUMMINGS (officer "Cherry Blossom Shake"), BRIAN QUERY (Lieutenant who stated "When Did You Add The Bleach"), SERGEANT ELLIOT ZINSTEIN (Sergeant "Who called in ESU"), and Defendant POLICE OFFICERS "JOHN DOES 1-20" (Collectively, "Defendant POLICE OFFICERS," individually, "Defendant POLICE OFFICER"), were duly sworn police officers of said department

and were acting under the supervision of said department and according to their official duties.

10.     At all times relevant herein, the Defendant POLICE OFFICERS either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.     Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said Defendants while acting within the course and scope of their duties and functions as agents, servants, employees and officers of the Defendant CITY.

12.     Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting in furtherance of their employment by Defendant CITY.

13.     Plaintiff GILLIAM, in furtherance of his causes of action brought pursuant to New York State law, filed timely a Notice of Claim against the CITY, in compliance with the Municipal Law Section 50, and the Defendant CITY OF NEW YORK held a 50-h hearing on August 17, 2020.

14.      More than thirty (30) days have elapsed since said Notice of Claim was filed and the CITY has failed to pay or adjust the claim.

15.     This action was brought within a year and 90 days of the event giving rise to Plaintiff GILLIAM's State causes of action.

16.    This action falls within one or more of the exceptions as set forth in CPLR Section 1602, involving intentional actions, as well as the defendant, and/or defendants, having acted in reckless disregard for the safety of others, as well as having performed intentional acts.

17.    Plaintiff GILLIAM sustained damages in an amount in excess of the jurisdictional limits of all the lower Courts of the State of New York.

## IV. Facts

18.    On May 25, 2020, Minneapolis police officer Derek Chauvin murdered George Floyd, who was handcuffed and lying face down on the ground, by suffocating him to death in broad daylight on the street.

19.    Floyd's murder and the police murder of Breonna Taylor in Louisville, Kentucky, in addition to recent police murders of other Black people in the United States sparked the largest movement for social and racial justice in history and has included peaceful protests around the world against anti-Black police violence, systemic racism, and inequality.

20.    The many protests in New York City were universally critical of the NYPD and its continued policies of targeting and victimizing people of color – echoing protests after the NYPD's unjustified killings of Ramarley Graham, Akai Gurley, Eric Garner, Delrawn Small, Sean Bell, and countless others. The protests called for reforming and even dismantling the NYPD and re-directing funds to needed social and civic programs in communities of color. City officials, particularly

Mayor Bill de Blasio, Police Commissioner Dermot F. Shea, and Chief of Department Terence A. Monahan, openly expressed hostility toward their viewpoint. They moved to suppress the protests with well-orchestrated operations corralling and violently arresting the protesters.

21.     Following the murder of George Floyd, the NYPD carried out no less than six operations between May 29 and June 4, 2020 where they surrounded and "kettled" protesters critical of the NYPD and police practices that target communities of color, and violently assaulted and arrested protesters. See *Gelbard* et al. *v. City of New York* et al., No. 20 Civ. 3163 (E.D.N.Y.); *Sierra et al.* v. *City of New York, et al.*, No. 20 CV 10291 (S.D.N.Y.); *Payne* et al. *v. de Blasio* et al. No. 20-cv-08924 (S.D.N.Y.).

22.     It is within this background that on June 15, 2020, Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake were sent from the 42nd Precinct in the Bronx to lower Manhattan for "protest duty".

23.     At approximately 7:30 p.m., the three officers used a mobile application to order three milkshakes—one strawberry, one vanilla, and one cherry—from the Shake Shack at Fulton Transit Center.

24.     When the officers arrived several minutes later, their milkshakes were packaged and waiting for them.

25.     After sipping the shakes, Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake complained that their shakes did not taste right, so they threw the drinks in the trash.

26.     Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake then informed Plaintiff MARCUS GILLIAM, who was working as the manager at the Shake Shack that they believed there was something was wrong with the shakes.

27.     Mr. GILLIAM denied that there was anything wrong with their shakes. Nevertheless, Mr. GILLIAM apologized that they did not like how the shakes tasted and issued Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake vouchers for free food and milkshakes, which they accepted.

28.     Mr. GILLIAM issued Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake vouchers for free food and milkshakes as a courtesy that is always extended to first responders, including NYPD officers.

29.     Since the orders were placed using a mobile application, and not in person, Mr. GILLIAM and the other Shake Shack employees, including Ms. IRVING and Mr. GRULLON, could not have known that police officers had placed the order.

30.     Since the order was already packaged and waiting for pickup when Officers Strawberry Shake, Vanilla Shake and Cherry Shake arrived at the Shake

Shack, Mr. GILLIAM and the other Shake Shack employees, including Ms. IRVING and Mr. GRULLON, could not have "dosed" the milkshakes after they arrived.

31.     Neither Mr. GILLIAM nor any other Shake Shack employee, employees, including Ms. IRVING and Mr. GRULLON, put any cleaning solution, bleach, chemicals or "toxic substances" in the shakes ordered by Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake.

32.     Neither Mr. GILLIAM nor any other Shake Shack employee, employees, including Ms. IRVING and Mr. GRULLON, negligently left any cleaning solution in the cups used to make the shakes ordered by Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake.

33.     The shakes ordered by Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake in fact contained no cleaning solution, bleach, chemicals or "toxic substances".

34.     The shakes ordered by Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake were normal in every way.

35.     Officers Strawberry Shake, Vanilla Shake and Cherry Shake knew or should have known that Plaintiffs did not put a "toxic substance", in their milkshakes.

36.     Defendants Officers Strawberry Shake, Vanilla Shake and Cherry Shake simply did not like how their shakes tasted and falsely accused Plaintiffs of putting a "toxic substance", possibly bleach in their milkshakes.

37.     Despite claiming that Plaintiffs had put a "toxic substance", possibly bleach in their milkshakes, Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake did not preserve the shakes as evidence, but threw them in the garbage.

38.     Despite claiming that Plaintiffs had put a "toxic substance", possibly bleach in their milkshakes, Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake never got sick or exhibited any physical signs of having ingested bleach or any other "toxic substance."

39.     Officers Strawberry Shake, Vanilla Shake and Cherry Shake falsely informed their supervisor, Sergeant ZINSTEIN, that Plaintiffs had put a "toxic substance", possibly bleach, in their milkshakes.

40.     Sergeant ZINSTEIN informed Lieutenant QUERY that Plaintiffs had put a "toxic substance", possibly bleach, in their milkshakes.

41.     ZINSTEIN and QUERY knew that Officers Strawberry Shake, Vanilla Shake and Cherry Shake were not sick and did not show any signs of having ingested a toxic substance.

42.     Nevertheless, ZINSTEIN and QUERY ordered that Officers Strawberry Shake, Vanilla Shake and Cherry Shake be taken to the hospital.

43.     Without any evidence that Officers Strawberry Shake, Vanilla Shake and Cherry Shake had ingested any toxic substances, or that any crime had been

committed, ZINSTEIN and/or QUERY ordered that a crime scene be setup at the Shake Shack.

44.    The Shake Shack closed at 9:00 p.m., and thereafter, all employees, including Plaintiffs, began to clean up the kitchen for the next day's business.

45.    At approximately 9:05 p.m., ZINSTEIN and/or QUERY and numerous other Police Officers arrived at the Shake Shack and immediately detained Plaintiffs and all the other employees in the eating area.

46.    The Plaintiffs and the other Shake Shack employees asked if they were free to leave, and the Defendant POLICE OFFICERS informed them that they were not free to leave.

47.    Plaintiffs and the other Shake Shack employees had to ask permission to use the bathroom.

48.    Defendant POLICE OFFICERS did not permit Plaintiffs to use the bathroom on their own, but instead escorted the Plaintiffs to the bathroom and watched them while they used the bathroom.

49.    The Defendant POLICE OFFICERS accused Plaintiffs and the other Shake Shack employees of putting bleach into the shakes and intentionally poisoning Officers Strawberry Shake, Vanilla Shake and Cherry Shake.

50.    Plaintiff Mr. GILLIAM denied the allegations but cooperated with the police investigation in every way, including, but not limited to: (a) voluntarily permitting a thorough physical search of the premises; (b) allowing employees to be

interviewed on the scene by police officers; (c) permitting officers to review the surveillance video recorded during the time of the alleged "poisoning"; (d) showing the officers how milkshakes are made; (e) providing the Defendant POLICE OFFICERS with samples of the custard used to make the shakes; and (f) permitting officers to search the belongings of the employees, including inside of backpacks and other bags.

51.    Despite knowing there was no evidence that Plaintiffs had put a "toxic substance" in the shakes, ZINSTEIN and/or QUERY called in the Emergency Service Unit to set up a crime scene at Shake Shack.

52.    Despite knowing there was no evidence that Plaintiffs had put a "toxic substance" in the shakes, and that Officers Strawberry Shake, Vanilla Shake and Cherry Shake had never gotten sick or exhibited any physical symptoms of having ingested a "toxic substance", ZINSTEIN and/or QUERY ordered Officers Strawberry Shake, Vanilla Shake and Cherry Shake to go to the hospital.

53.    At approximately 9:20 p.m.—nearly two hours after Officers Strawberry Shake, Vanilla Shake and Cherry Shake first got their shakes—NYPD's Emergency Service Unit arrived and set up a crime scene at the Shake Shack.



54.     The Emergency Services Unit, upon information and belief, tested the discarded milkshakes and found no evidence of any bleach or other "toxic" substances.

55.     John Doe Police Officers 1-20 arrived at the Shake Shack and continued to detain Plaintiffs and all the other Shake Shack employees.

56.     The Defendant POLICE OFFICERS detained Ms. IRVING, Mr. GRULLON, and the other employees, and forced then to sit on the ground in opposite corners of the Fulton Transit Center and would not permit them to speak to each other.

13

57.    The Defendant POLICE OFFICERS, including ZINSTEIN and/or QUERY, reviewed the security camera footage and determined that neither Plaintiffs nor any other employee put bleach or any other "toxic substance" in the milkshakes.

58.    When Plaintiff Mr. GILLIAM was showing the Defendant Police Officers how to make a milkshake, ZINSTEIN and/or QUERY stated to Plaintiff "when did you add the bleach?"

59.    ZINSTEIN and/or QUERY stated to Plaintiff "you put three of my cops in the hospital," despite knowing that Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake never got sick and never showed any physical signs of having ingested bleach or any other "toxic" substance.

60.    Defendant POLICE OFFICERS knew that Plaintiffs did not put bleach or any other "toxic" substance in the shakes.

61.    Defendant POLICE OFFICERS knew that there was no cleaning solution in the shakes.

62.    Defendant POLICE OFFICERS knew that they lacked reasonable or probable cause to believe that Plaintiffs put bleach or any other "toxic" substance in the shakes.

63.    Defendant POLICE OFFICERS knew that they lacked any evidence whatsoever that Plaintiffs or any other Shake Shack employee put bleach or any toxic substance in the shakes.

14

64.     Defendant POLICE OFFICERS knew that they lacked any evidence whatsoever that Plaintiffs or any other Shake Shack employee negligently left cleaning solution in the cups used to make the shakes.

65.     No reasonable police officer could have believed that they had reasonable or probable cause to believe that Plaintiffs or any other Shake Shack employee had placed bleach or any "toxic" substance in their shakes.

66.     Defendant POLICE OFFICERS knew that Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake never got sick and never showed any physical signs of having ingested bleach or any other "toxic" substance.

67.     Despite not being sick and not showing any physical signs of having ingested bleach or any other "toxic" substance, ZINSTEIN and/or QUERY ordered that Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake be taken to Bellevue Hospital, where they were examined and released without ever showing symptoms of having ingested a toxic substance.

68.     ZINSTEIN and QUERY knew that Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake never got sick and never showed any physical signs of having ingested bleach or any other "toxic" substance.

69.     Nevertheless, one or more of the Defendant POLICE OFFICERS falsely informed the Police Benevolent Association ("PBA") and the Detectives' Endowment Association ("DEA") that Defendant Officers Strawberry Shake, Vanilla

Shake and Cherry Shake had been "poisoned" by Plaintiffs, causing them to become sick and forcing them to seek medical treatment at the hospital.

70.     While Defendants were detaining Plaintiffs at the Shake Shack in the Fulton Transit Center, the DEA, PBA and PBA President Patrick Lynch published Tweets that falsely claimed that Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake had been "poisoned" by Plaintiffs.

71.     The DEA sent out the following tweet, which was shared approximately 11,000 times:

*📢URGENT SAFETY MESSAGE📢*
*Tonight, three of our fellow officers were intentionally poisoned by one or more workers at the Shake Shack at 200 Broadway in Manhattan. Fortunately, they were not seriously harmed. Please see the safety alert⬇️ https://t.co/D8Lywivhdu*

72.     Similarly, PBA president, Patrick Lynch, published a tweet that was shared thousands of times, which stated:

> "This evening, several MOS assigned to protest detail in lower Manhattan took meal at the Shake Shack location on Broadway and Fulton Street. At some point during their meal period, the (officers) discovered that a **toxic substance, believed to be bleach, had been placed in their beverages**. The contamination was not discovered until the (officers) had already ingested a portion of their beverages.

16

They are currently at the hospital receiving treatment and
are expected to recover. When New York City police officers
cannot even take meal without coming under attack, it is
clear that environment in which we work has deteriorated
to a critical level. We cannot afford to let our guard down
for even a moment."

73.     Patrick Lynch's tweet was republished by the PBA, which was also

shared thousands of times:




74.     In addition to being "liked" and "shared" thousands of times,

thousands of individuals commented on the tweets expressing their disdain for

Plaintiffs.

75.     Following the PBA, DEA, and Patrick Lynch's false statements, the hashtag #BoycottShakeShack was trending on Twitter

76.     As a result of the false accusations by Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake, Plaintiffs were unlawfully seized by the Defendant POLICE OFFICERS, including ZINSTEIN and/or QUERY.

77.     As a result of the false accusation by Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake, Plaintiffs were falsely arrested by the Defendant POLICE OFFICERS.

78.     Upon information and belief, ZINSTEIN and/or QUERY ordered that Plaintiffs be detained and arrested.

79.     Upon information and belief, ZINSTEIN and/or QUERY ordered that Plaintiffs be transported to the 1st Precinct and interrogated.

80.     Plaintiffs were placed in NYPD vehicles and transported to the 1st Precinct.

81.     Plaintiffs and the other Shake Shack employees were detained at the 1st Precinct for several hours.

82.     Plaintiffs asked several times if they were free to leave, and they were informed by the Defendant POLICE OFFICERS that they were not free to leave.

83.     Plaintiffs and the other Shake Shack employees were repeatedly told by the NYPD officers that they were not permitted to speak to one another while they were detained at the 1st Precinct.

84.    Plaintiffs and the other Shake Shack employees were taken one-by-one to interrogation rooms and questioned by NYPD detectives.

85.    Throughout the interrogations, the Detectives taunted Plaintiffs about putting bleach in the milkshakes.

86.    Eventually, after being detained at the 1st Precinct for several hours, Plaintiffs were transported back to the Shake Shack at approximately 2:30 a.m.

87.    Neither Plaintiffs nor any other Shake Shack employee was ever charged with a crime.

88.    Plaintiffs were unlawfully detained by the Defendant POLICE OFFICERS against their will for approximately five to six hours.

89.    Thereafter, at approximately 4:00 a.m. on June 16, 2020, NYPD Chief Rodney Harrison sent a tweet admitting that Plaintiffs and the other Shake Shack employees had done nothing wrong.



90.    Chief Harrison's tweet constitutes and admission that Plaintiffs were falsely arrested.

19

91.     Before Plaintiffs were detained and falsely arrested, hours before Chief
Harrison sent out his tweet, the NYPD investigators knew that they lacked
probable cause to believe that Plaintiffs or any other Shake Shack employees had
committed any crime.

92.     The Defendant POLICE OFFICERS lacked probable cause to arrest
Plaintiffs for any crime.

93.     No reasonable police officer would have believed that there was
probable cause to arrest Plaintiffs for any crime.

94.     After the incident, numerous people contacted Plaintiffs to ask about
the incident.

95.     After the incident, numerous people contacted Plaintiffs and asked
them if they "poisoned" Defendant Officers Strawberry Shake, Vanilla Shake and
Cherry Shake.

96.     In addition, the Shake Shack store in Lower Manhattan received
threatening phone calls after the incident.

97.     After the incident, numerous people contacted Plaintiffs to ask them
about the false allegations in the tweets by Defendants LYNCH, PBA and DEA.

98.     After the incident, numerous Shake Shack customers asked Plaintiffs
about the false allegations in the tweets by Defendants LYNCH, PBA and DEA.

99.    After the incident, numerous individuals entered the Shake Shack and taunted Plaintiffs for allegedly poisoning Defendant Officers Strawberry Shake, Vanilla Shake and Cherry Shake.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### FALSE ARREST UNDER 42 U.S.C. § 1983

100.    Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

101.    One or more of the Defendant POLICE OFFICERS seized and arrested plaintiffs.

102.    The arrests were made in the absence of a warrant for the arrests.

103.    The arrests were made in the absence of probable cause for these arrests.

104.    The Defendant POLICE OFFICERS arrested plaintiff without having exigent circumstances for doing so.

105.    There was no other authority for the arrest of plaintiffs.

106.    The plaintiffs were conscious of their arrests.

107.    The plaintiffs did not consent to their arrests.

108.    As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer economic injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, economic

21

damages, legal expenses and damages to their reputation and standing within the community.

109.   Accordingly, Plaintiffs demands judgment against Defendants in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

## SECOND CLAIM FOR RELIEF
## FAILURE TO INTERVENE UNDER 42 U.S.C. § 1983

110.   Plaintiffs re-allege each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

111.   None of the individual defendants intervened to stop the unlawful conduct of the officers who falsely reported that they were poisoned, and the officers who arrested or caused the arrest of plaintiffs based on that false information.

112.   The Defendant POLICE OFFICERS had numerous meaningful opportunities to intervene to prevent the unlawful conduct of the other officers, but failed to do so.

113.   As a result of the above constitutionally impermissible conduct, Plaintiffs were caused to suffer economic injuries, violation of their civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, economic damages, legal expenses and damages to their reputation and standing within the community.

114.   Accordingly, Plaintiffs demands judgment against Defendants in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

22

## THIRD CLAIM FOR RELIEF
## FALSE ARREST UNDER NEW YORK STATE LAW
### (Gilliam against Defendants)

115.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

116.    Defendant POLICE OFFICERS seized and arrested Plaintiff.

117.    As a result of the aforesaid conduct by the Defendants, Plaintiff was unlawfully detained and confined.

118.    The Defendant Police Officers——in performance of their duties with powers and authorities designated upon them by the Defendant CITY—— intentionally confined Plaintiff.

119.    Plaintiff was at all times consciously aware of her confinement by the Defendant Police Officers.

120.    The arrest was made in the absence of a warrant for the arrest.

121.    The arrest was made in the absence of probable cause for the arrest.

122.    The Defendant Police Officers arrested Plaintiff without having exigent circumstances for doing so.

123.    There was no other authority for the arrest of Plaintiff.

124.    Plaintiff was conscious of the arrest.

125.    Plaintiff did not consent to the arrest.

23

126.   At no point throughout Plaintiff's unlawful detention and confinement by the Defendant Police Officers were the actions of the Defendant Police Officers otherwise privileged.

127.   Defendant City is also liable to Plaintiff on the basis of *respondeat superior* as a result of the unlawful actions of the Defendant Police Officers as described herein.

128.   As a result of Defendants' impermissible conduct, Plaintiff was injured and harmed.

129.   Accordingly, Plaintiff demands judgment against Defendants in a sum of money which exceeds the jurisdictional limits of all courts of lesser jurisdiction.

**WHEREFORE,** Plaintiffs respectfully requests that judgment be entered for all claims:

i.   Awarding plaintiffs full and fair compensatory damages as decided by the jury; and
ii.   Awarding plaintiffs full and fair punitive damages as decided by the jury; and
iii.   Awarding plaintiffs reasonable attorney fees pursuant to 42 U.S.C. §1988; and
iv.   Granting such other and further relief as this Court may deem just and proper.

Dated:      New York, New York
            January 24, 2022

                              ROTH & ROTH, LLP


                              _____
                                   ~//s//~
                              Elliot D. Shields, ED3372

24

192 Lexington Ave., Suite 802
New York, New York 10016
212-425-1020
eshields@rothandrothlaw.com