# ROTH & ROTH, LLP
192 LEXINGTON AVENUE, SUITE 802, NEW YORK, NEW YORK 10016
ROTHANDROTHLAW.COM T: (212) 425-1020 F: (212) 532-3801

April 6, 2022

**BY ECF**
Hon. Ronnie Abrams
United States District Judge
United States District Court
40 Foley Square
New York, New York 10007

      Re:    <u>Gilliam et al. v. City of New York, et al.</u>, 21-CV-5263 (RA)

Your Honor:

I represent represents plaintiffs Marcus Gilliam, Catherina Irving and Randy Grullon. We submit this joint letter on behalf of plaintiffs and defendants in accordance with the court's order of October 13, 2021 (ECF. 23), and email dated April 5, 2022, issued in this matter and in the companion case <u>Ojeda v. City of New York, et al.</u>, 21-CV-5775 (RA). The parties rely on the case management plan previously submitted.

<u>Nature of the Action</u>. <u>Plaintiffs' Position:</u> Following the murder of George Floyd on May 25, 2020, there were many protests in New York City, which were universally critical of the NYPD and its continued policies of targeting and victimizing people of color. The NYPD responded to these peaceful protests by beating and violently arresting protesters *en masse*. It is within this background that on June 15, 2020, Defendants Nova Diaz, and Cummings and Estrada—all from the 42nd Precinct in the Bronx—were assigned to protest detail in downtown Manhattan. At approximately 7:30 p.m., the three officers used a phone application to order three milkshakes—one strawberry, one vanilla, and one cherry blossom—from the Shake Shack at Fulton Transit Center.

After the three officers picked up their pre-ordered and pre-packaged milkshakes, they falsely reported to their superiors that Plaintiffs Marcus Gilliam, Catherina Irving and Randy Grullon—who have no criminal record whatsoever—had intentionally poisoned their milkshakes. Shortly thereafter, approximately 20 NYPD officers responded to the Shake Shack and unlawfully seized, detained and falsely arrested Plaintiffs, who were detained for several hours at the restaurant before being transferred to the First Precinct where they were interrogated in an accusatory and harassing manner. While Plaintiffs were in custody, members of the NYPD tweeted that the Shake Shack employees had intentionally poisoned them, which were "shared" tens of thousands of times, which was terrifying for Plaintiffs—all minorities were being publicly accused of intentionally harming police officers. The three officers never displayed any symptoms of having been poisoned. The NYPD conducted an investigation and determined there were no foreign substances placed in the milkshakes. Plaintiffs were released after midnight on

June 16, 2020. No criminal charges were ever filed. Subsequently, the NYPD acknowledged publicly that the initial report that police officers were "poisoned" was false.

The hysterical attitude within the NYPD in June 2020 surrounding the Black Lives Matter protests, and the view that every citizen was a potential enemy combatant, is the reason this incident occurred. Defendants lacked reasonable or probable cause to seize, detain and arrest Plaintiffs.

Defendants' Position:  The individual defendants Cummings, Nova Diaz and Reyes Estrada on June 15, 2020 went to a Shake Shack in the Fulton Center for a meal while on duty. They ordered milkshakes which did not taste correctly.  They immediately reported this fact to the Shake Shack manager, who apologized and gave them vouchers for free Shake Shack items. They then reported the fact that their shakes did not taste correctly to their supervisors, defendants Sgt. Elliot Zinstein and Lt. Brian Query, and went to the hospital.  The NYPD then went to the Shake Shack to investigate.  The Shake Shack manager, Gilliam plaintiff Marcus Gilliam told Lt. Query that he believed it was cleaning detergent in the shakes that caused them to taste incorrectly.  The NYPD then investigated the incident.  Plaintiffs were never arrested, handcuffed or charged with any crime.   Even if she can somehow prove liability, plaintiffs' damages would be *de minimis*.

Jurisdiction and Venue.  The lawsuit seeks damages, including attorney's fees, pursuant to 42 U.S.C. §§ 1983 and 1988, which confers subject matter jurisdiction on this court under 28 U.S.C. §§ 1331 and 1343, and brings state law claims over which this court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.  Venue is proper because the events occurred in Lower Manhattan, at 200 Broadway, inside the Fulton Street subway station.

Contemplated/outstanding motions.  Plaintiffs' Position:  Defendants Genesis Y. Nova Diaz, Edwin Reyes Estrada, Precious Cummings and the City filed a Rule 12(b)(6) motion to dismiss the claims against them in the Second Amended Complaint. ECF 55. Plaintiffs plan to file an opposition to that motion on or before April 22, 2022.  The moving defendants will reply by April 29, 2022.

Defendants' Position:  The defendants Nova Diaz, P.O. Cummings and P.O. Reyes Estrada have filed a motion to dismiss.  The City has also filed a partial motion to dismiss.  All defendants anticipate a motion for summary judgment after discovery on any remaining issues.

Status of Discovery.  Plaintiffs' Position:  The parties have exchanged initial disclosures, served Requests for Production of Documents and Interrogatories, and responses to each other's discovery demands. Defendants objected to the preponderance of Plaintiff's demands. Plaintiff plans to write Defendants a letter outlining the deficiencies in their response and then meet and confer with defendants regarding their responses.

Defendants' Position:  Plaintiffs and defendants have both served initial disclosures, initial discovery requests and initial responses thereto.  With respect to plaintiffs' contentions of issues with defendants' responses, plaintiffs' requests, in large part, are so beyond the pale as to what is appropriate in this case as to have been served in bad faith.  Defendants have already produced the entire NYPD investigation into this matter, videos, including body worn camera footage, lab results, crime scene unit reports and more.  Further, the City will be producing additional documents as set forth in its responses.  I will of course meet with Mr. Shields in good faith, but his bad faith discovery requests again demonstrate a lack of appreciation of the Federal

Rules of Civil Procedure, especially on relevance, burden and proportionality. He seems to be attempting to bury the City in discovery to the end of forcing the City to pay plaintiffs what he sought at the mediation. It won't be successful.

Defendants will also raise any issues that they have with plaintiff's discovery responses promptly as well.

Prior settlement discussions. The parties attended one mediation session as required by the Section 1983 Plan, which was unsuccessful. Thereafter the City served Rule 68 Offers of Judgment that plaintiffs did not accept. Plaintiffs remain open to discussions in order to resolve their claims, and are willing to be reasonable in their demands. Plaintiffs believe that a settlement conference with a magistrate judge may be more fruitful in helping the parties resolve this matter than a private mediator. The City has not shown a willingness to engage in further discussions at this time.

The City's Position: Based on what occurred at the mediation held in this case, and plaintiff's settlement demands, the City is not optimistic that a settlement can be reached in this matter anytime soon. While the City of course believes that discussing settlement never hurts, and will always negotiate in good faith, the City believes that a settlement conference at this time would be futile.

Estimated length of trial. Plaintiffs' Position: Plaintiffs estimate approximately 7-10 trial days, assuming that this case is jointly tried with the companion case Ojeda v. City of New York, et al., 21-CV-5775 (RA).

Defendants' Position: Defendants estimate four days for trial.

Other important issues. This is not the ordinary false arrest case. Defendants' extreme and outrageous conduct caused Plaintiffs to be falsely arrested and detained for approximately six hours, and to suffer severe emotional and psychological damages. The high-profile nature of this incident caused Plaintiffs far more severe emotional and psychological damages than the average six-hour detention. When they were in custody, Plaintiffs were terrified as the NYPD officers taunted them and accused them of intentionally poisoning police officers. Moreover, Plaintiffs were reminded of this incident everyday as they went into work, which weighed heavily on them.

Plaintiffs believe that this case involves a clear abuse of police authority based on a false report—one that the NYPD itself acknowledged, publicly, was false, within hours after it was made. Members of the NYPD publicly, and falsely, claimed that Shake Shack employees poisoned a fellow officer, at a time when tensions in the city were high, in the middle of the George Floyd and Black Lives Matter protests. These facts make the case substantially different than a typical six-hour detention case, yet the City appears to treat this lawsuit as a typical one. As noted above, we remain open to settlement discussions and will be reasonable in our position, but it does not appear that the City is interested in an amicable resolution at this point.

Defendants' Position:

Based on what occurred at the mediation held in this case, and plaintiff's settlement demands, the City is not optimistic that a settlement can be reached in this matter anytime soon. While the City of course believes that discussing settlement never hurts, and will always negotiate in good faith, the City believes that a settlement conference at this time would be futile.

Respectfully submitted,

~//s//~
Elliot Shields, Esq.
ROTH & ROTH, LLP

cc: All Counsel (by ECF)